## ELMER v. WALLACE, Com'r of Conservation of Alabama.

(District Court, M. D. Alabama, N. D., at Montgomery.   July 19, 1921.)

No. 267.

1. **Injunction �köm85(2)—States �köm191(2)—State officers may be enjoined from enforcing void statute; suit to enjoin officers from enforcing statute not one against state.**

   State officers may be enjoined from enforcing a state statute which is void as in violation of rights secured by the Constitution of the United States, and a suit for that purpose is not one against the state.

2. **Commerce �ököm57—Provisions of Alabama Shrimp Act held void as imposing restraint upon interstate commerce.**

   Alabama Shrimp Act, by section 7, imposes a tax of 5 cents per barrel on salt water shrimp taken from the waters of the state for canning, drying, or shipping within the state. Section 8, while making it unlawful to transport such shrimp by water beyond the boundary of the state unless the usual price paid therefor at the place to which they are transported is higher than paid in the state, also imposes a tax of 20 cents per barrel on shrimp so transported outside, and section 12 prohibits any person who has not for more than a year been a bona fide resident of the state from catching shrimp in its waters for shipment out of the state by water. *Held*, that sections 8 and 12 were manifestly intended to discriminate against canners and packers in other states by imposing hindrances and burdens on the interstate traffic in fresh shrimp, and are void as in violation of the commerce clause of the Constitution.

In Equity. Suit by E. E. Elmer against John H. Wallace, Commissioner of Conservation of the State of Alabama, for permanent injunction. Decree for complainant.

Stokely, Scrivner & Dominick, of Birmingham, Ala., for plaintiff.
Harwell G. Davis, Atty. Gen. of Alabama, and Hugh White, Sp. Asst. Atty. Gen. of Alabama, of Gadsden, Ala., for defendant.

CLAYTON, District Judge.   The plaintiff, a citizen of Mississippi, engaged in the shrimp packing business at Biloxi in that state, brought his bill to enjoin the enforcement by the defendant of the act of Alabama approved September 2, 1919, called the Shrimp Act (Gen. Acts Ala. 1919, p. 252).   It is averred that sections 8 and 12 of the act are violative of the Constitution of the United States in the particulars hereinafter named.   The defendant is Commissioner of Conservation of this state—hereafter called Commissioner—and is charged with the administration of this law. .

The act under scrutiny declares all salt water shrimp found in any of the waters of the state to be the property of the state for the purpose of protecting the same and regulating the manner in which they shall be taken and marketed.   By way of parenthesis it may be observed that the shrimp belong to the state without this unnecessary legislative declaration.   A close season is provided from June 1, to August 1, in each year.   An annual license tax is imposed on seines used in catching shrimp and is graduated according to the length of the seines. A like tax is put on each boat used in the industry, the tax on boats owned by nonresidents of the state being double that on boats owned

by residents. A standard of measure for shrimp is established. Ports of entry are provided for, and the Commissioner is authorized to make necessary rules and regulations not inconsistent with the act. Shrimp fishermen and purchasers from them are required to make certain reports to the chief oyster inspector of the state, who, with his assistants, is charged with certain duties.

Sections 5, 7, 8, and 12 of the act are as follows:

"Sec. 5. That it shall be unlawful for any person to use any boat for the purpose of drawing a seine, used in catching shrimp, or hauling or carrying shrimp, without first having secured an annual license due and payable on the 1st of October in each and every year, as follows: for each and every boat owned by a resident of this state, up to five ton capacity, shall be an annual license fee of $5.00; for every boat, from five to fifteen ton capacity, shall be an annual license fee of $15.00; and for all boats over fifteen ton capacity shall be an annual license fee of $25.00; that for all boats owned by nonresidents of this state, used for the purpose of catching or hauling shrimp, within the state up to five ton capacity, shall be due and payable on the 1st of October, in each and every year, an annual license of $10.00, for every boat, owned by nonresidents, used for the purpose of taking or hauling shrimp within the state, of from five to fifteen ton capacity, shall be paid an annual license fee of $30.00, and for every boat used by nonresidents of this state for the purpose of taking or hauling shrimp within the state, of over fifteen ton capacity, shall be paid an annual license fee of $50.00. Said licenses to be issued by the State department authorized by law to administer the laws of this state for the protection of shrimp."

"Sec. 7. That it shall be unlawful to catch or market salt water shrimp for commercial purposes, that is, for canning, drying, or shipping within the State unless a tax of five cents per barrel be paid by the person, firm or corporation, catching the same for the purpose of canning, drying or shipping, or purchasing the same from independent shrimp fishermen for the purpose of canning, drying or shipping, and said tax to be paid but once."

"Sec. 8. That it shall be unlawful for any person, firm or corporation to take, carry or transport by water, any salt water shrimp, taken in the waters of Alabama, except canned shrimp, to a point beyond the boundary line of said State unless the usual market price, paid by canneries and dealers, for shrimp in the fresh state, in the place to which they are so transported, is higher than the price paid for same in this State; provided that every person, firm or corporation, transporting salt water shrimp by water, taken within the state of Alabama to a point outside of the state line, shall pay a tax of twenty cents per barrel upon such shrimp transported beyond the boundaries of said state, except canned shrimp, before said shrimp are permitted to leave the state."

"Sec. 12. That no person who has not been a bona fide resident of the state for more than one year, next preceding, shall be permitted to catch shrimp from the waters of this state, to be shipped out of this state by water."

The plaintiff avers that his packing plant, equipment, and boats purchased for use in connection with his business represent an investment of approximately $30,000; that he has paid to the state of Alabama on 12 of his boats the license tax required; that the shrimp available for the operation of his business migrate during the year so that at certain times shrimp are to be found off the coast of Louisiana, at other times off that of Mississippi, and at still other times off that of Alabama; and that unless he is permitted to catch shrimp with his own fleet of boats or to purchase shrimp from other fishermen within Alabama waters during the time shrimp are found there, and transport them to his packing plant at Biloxi, then it will be necessary, during such times as the shrimp have migrated to Alabama waters, to

close down his plant and disorganize his force at great and irreparable loss, unless he should resort to the alternative of shipping his shrimp to Biloxi from Alabama by railroad and not by water, and that even in the event of such alternative, still great and irreparable loss would be visited upon him; and that he would, in either case, be damaged to an extent exceeding $3,000 if this act is enforced. The bill further charges in substance that the act in permitting the free and unlimited transportation in interstate commerce of fresh shrimp by rail, and of canned shrimp by rail and by water, and at the same time imposing restrictions on the shipment in interstate commerce of fresh shrimp by water, does not operate and was not intended to operate for the protection and conservation of shrimp, but was designed and is intended to favor Alabama shrimp packers engaged in the business at Bayou la Batre and other Alabama places to the great detriment and irreparable loss of this plaintiff and other competitors engaged in the shrimp packing industry at Biloxi, Miss., and other points outside of the state of Alabama. The bill is supported by the evidence and, in essential particulars, by the agreed statement of facts.

By consent of the parties in open court the cause is now submitted for final decree upon the bill, the application for perpetual injunction, the agreed written statement of facts, the defendant's answer, admitting material allegations of the bill and denying in short and general terms certain paragraphs of the bill not necessary to mention here, and on the motion of the defendant to dismiss the bill for the want of equity.

It is a familiar rule that the motion to dismiss a bill for the want of equity does not challenge the allegations of facts of the bill, but, on the contrary, so far as such motion is concerned, admits them to be true. Inasmuch as the bill does contain equity, as it will be hereinafter shown, the motion must be denied.

[1] As to the ground of the motion to dismiss the bill for the alleged reason that this is a suit against the state, little, if anything, need be said. All authorities recognize that a state as a sovereign is not subject to suit, that the state cannot be enjoined, and that the state officers when sued cannot be restrained from enforcing the state's laws. However, a void enactment of the state, that is, one in conflict with the Constitution of the United States, is not a law, and being a nullity it confers no authority. Accordingly a state land commissioner was enjoined from proceeding under an unconstitutional act to cause irreparable damage to the defendant's property rights. Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699, 35 L. Ed. 363. Commissions have been restrained from enforcing a statute which illegally burdened interstate commerce. McNeill v. Southern Ry., 202 U. S. 543, 26 Sup. Ct. 722, 50 L. Ed. 1142; Ry. Com. v. Ill. Cent. R. R., 203 U. S. 345, 29 Sup. Ct. 458, 53 L. Ed. 760. See other cases cited in Hopkins v. Clemson College, 221 U. S. 636–644, 31 Sup. Ct. 654, 55 L. Ed. 890, 35 L. R. A. (N. S.) 243; Van Deman & Lewis Co. v. Rast (D. C.) 214 Fed. 827–831.

[2] While the bill assails the act upon several grounds, the controlling question in the case is whether or not sections 8 and 12 of the

act, hereinabove set out, are a device by the state to regulate or hamper interstate commerce in violation of subdivision 3, par. 8, art. 1, of the Constitution of the United States. Of course, if the answer to the question is in the affirmative, such sections of the act cannot stand. And it matters not that the plan is novel or artful, or that it may foster the shrimp packing industry in Alabama, for if the real object sought is to do this by putting a restriction upon interstate commerce, the attempt must fail. It is hardly necessary to say that the power of Congress over commerce between the states is exclusive of such power on the part of any state, for in constitutional law this is so well settled by the adjudged cases as to be elementary. And it is also equally as well settled that transportation of persons or commodities from one state into another is interstate commerce.

It is well to consider section 7 of the act in pari materia with sections 8 and 12. It will be observed that section 7 provides:

"That it shall be unlawful to catch or market salt water shrimp for commercial purposes, * * * or shipping within the state unless a tax of five cents per barrel be paid."

And section 8 provides that salt water shrimp taken in Alabama, except when canned, must not be transported, by water, "to a point beyond the boundary line of said state unless the usual market price, paid by canneries and dealers for shrimp in the fresh state, in the place to which they are so transported, is higher than the price paid for same in this state"; and it also provides that such shrimp taken within the state of Alabama and transported or to be transported to a point outside of the state, by water, shall bear a tax of 20 cents per barrel before the shrimp are allowed to leave the state.

The particular provisions now considered of the act, summarized and analyzed, show: First, that this legislation invites or permits any one to catch shrimp in Alabama waters not to be shipped out of the state in fresh or raw condition, by water, upon the payment of a license and a tax of 5 cents per barrel; second (a) that if the shrimp caught are for transportation beyond the state, then the transportation of them out of the state, by water, is made unlawful, unless the price of shrimp at the point to which they are shipped in another state is greater than the price in Alabama; and that then (b) the tax is quadrupled upon each barrel of fresh shrimp if the transportation is by water.

The act itself and the facts in the case, including the public utterances of the Commissioner, are convincing that the purpose of the Legislature was to build up the shrimp packing industry in Alabama, at Bayou la Batre and elsewhere in the state, by imposing burdens and hindrances upon the interstate traffic in fresh or raw shrimp, with the obvious purpose, the necessary consequence, that Biloxi, Miss., and other places outside of Alabama and the industry there, should be discriminated against, and the industry in Alabama correspondingly favored. However commendable it may be on the part of the Commissioner and the Legislature to endeavor to encourage the development of the shrimp packing industry in Alabama, they cannot do so as it has been attempted here by invading the plenary and exclusive control of interstate commerce committed by the Constitution to the

Congress; and I may say any student of the causes inducing the change of the Confederacy of the United States of America into "a more perfect Union" knows that one of the chief of these causes was the desire to prevent any state, by its own legislation, from discriminating against the commerce and industries of any other state, even though such legislation might result in fostering the enterprises of the state so legislating.

Perhaps it is unnecessary to say more or to answer the insistence on the part of the state that her police power is invoked in the statute to conserve the shrimp in her waters and to provide proper rules for the catching and inspection of the same. If the act did no more than that, it would be unobjectionable. Admittedly the state can conserve and provide rules for the catching and inspection of shrimp and impose reasonable licenses or fees for the enforcement of an inspection law. Undoubtedly the police power is the power not delegated to the federal government but remaining in the states, and can be resorted to in regulating their own welfare, as they understand their welfare, their internal or domestic concerns; and it is also true, to state the proposition in another form, that all police power originally or inherently belonging to the state remains with the state except where expressly or by fair implication it has been taken away by the Constitution of the United States or the laws enacted in pursuance thereof. And, again, it has been said that it is not difficult to know where and when this power begins, but to say when and where it terminates is often a matter of controversy, and therefore is sometimes submitted for judicial ascertainment. It is sufficient to say that the books are full of reported cases illustrating the application of the principle that the state cannot impose restrictions or burdens upon interstate commerce under the pretext of conservation, inspection, or regulation. These cases show that a state has the authority to conserve its resources, e. g., wild animals, birds, oysters, etc.; to protect public safety, morals, and health; to provide inspection regulations of food, gasoline, etc.; and, generally, to do anything within the comprehensive police power of the state inherent in and not surrendered by such sovereignty. On the other hand, these cases vindicate the proposition that a state cannot impinge the power delegated to the federal government, as, for instance, a state cannot require inspection fees so excessive in amount for the enforcement of its laws as to interfere unreasonably with the freedom of interstate commerce; and, furthermore, the state cannot under any guise legislate to promote her own internal commerce or enterprises to the detriment of free commerce between the states and with foreign nations. And this case is but another illustration where the state has attempted to restrict the freedom of commerce between the states.

It is out of deference to the argument made for the defendant that the case of Geer v. Connecticut, 161 U. S. 519, 16 Sup. Ct. 600, 40 L. Ed. 793, is examined. There the statute of Connecticut forbade the possession of game killed or taken in that state for transportation beyond its boundaries. The court held, of course, that this enactment was within the police power of the state. How different this

case is from that is too evident to require a restatement of the facts and features of each or the legal principles governing them.

The defendant cites State v. Harrub, by the Supreme Court of Alabama, 95 Ala. 176, 10 South. 752, 15 L. R. A. 761, 36 Am. St. Rep. 195. There the statute prohibited the shipment beyond the limits of the state of oysters taken from the waters of Alabama while such oysters were in the shell, and also inhibited nonresidents of the state to take oysters from the waters of the state. Obviously, the intention of the Legislature was to keep all fresh oysters in the shell in the state for the use of the people of the state, and it was therefore within the police power of the state to do this.

Here the act, under express terms of section 7 and by fairest implication under sections 8 and 12, recognizes fresh shrimp as articles of interstate commerce and permits their shipment in unlimited quantities in such commerce by rail and otherwise, except by water, upon the payment of license and the tax of 5 cents per barrel, and upon making the required reports. Recognizing fresh shrimp as a commodity of general trade and interstate commerce, as the act clearly does, the restrictions attempted to be imposed by sections 8 and 12 against the shipment of such fresh shrimp by water, and the quadrupled tax upon the commodity, are evidently a burden upon interstate commerce, and, as such, hostile to the commerce clause of the Constitution. Perhaps it is not too much to say that further argument, or any argument at all, is unnecessary. The vices in sections 8 and 12 which have been pointed out are sufficient to compel this court to declare that such sections are null and void and that they cannot be enforced.

If further authority for this conclusion is desired, State v. Ferrandau, 130 La. 1035, 58 South. 870, Ann. Cas. 1913D, 1170, is in point. There Louisiana sought to create within the state a monopoly of the canning of oysters taken from its waters, just as here the state of Alabama has attempted to do in the canning of shrimp taken from her waters, by prohibiting the shipment of oysters beyond the limits of Louisiana for canning or packing outside of that state, while the act permitted the unlimited traffic in interstate commerce of oysters for any other purpose. The Supreme Court of Louisiana, in a very able opinion by Mr. Justice Monroe, with unanswerable logic, condemned the statute and cited a number of sustaining decisions, among them Brimmer v. Rebman, 138 U. S. 78, 11 Sup. Ct. 213, 35 L. Ed. 862, to the effect that—

"A state cannot, under the guise of exerting its police powers, or of enacting inspection laws, make discrimination against the products of its own or of other states."

It is of doubtful importance here to take note of the other ground advanced by the plaintiff in his attack on this statute, for I think what has been said is sufficient to dispose of the case. It is true that the act makes it unlawful to ship shrimp by water from Alabama to a place beyond the state's boundaries unless the price of shrimp at such place is greater than the price prevailing at the time in Alabama. Man-

ifestly, there can be no offense under this particular feature of the act unless shrimp are cheaper at the given time of shipment at, say, Biloxi in Mississippi than at, say, Bayou la Batre in Alabama. And the contention of the plaintiff is that said 'section 8 of the act, in undertaking to create a misdemeanor without providing any fixed standard for the determination of guilt or innocence or whether there has been any offense at all by one accused of its violation, contravenes well-known principles of criminal jurisprudence and constitutional law. Plainly, this section 8 makes the act of the transportation from Alabama a misdemeanor dependent upon a fact that may exist in another state according to the fluctuating market governing a merchantable commodity. This provision of the act surely is indefinite and uncertain and fixes no immutable standard of guilt, but leaves such standard to the variant and varying prices of shrimp in places beyond the confines of the state. By the terms of the statute the locus of the crime of illegal transportation is in Alabama, and the locus of the fact essential to render the transportation criminal is in another state; for instance, Mississippi. A limited investigation of commentaries and decided cases has not revealed to me any effort at legislation containing provsions very much like sections 8 and 12 of this act. On this phase of the case, and with due deference, it may be said that at least the draftsman of the provision seems to have possessed the ability to invent a novel device, but that the device creates a valid legal offense is doubtful.

I think there is parity of principle in this phase of the act with the principle in the enactment condemned by the Supreme Court in U. S. v. Cohen Gro. Co., 255 U. S. 81, 41 Sup. Ct. 298, 65 L. Ed. ——, decided February 28, 1921; Internat. Harvester Co. v. Kentucky, 234 U. S. 216, 221, 34 Sup. Ct. 853, 58 L. Ed. 1284.

Decree will be entered in harmony with this opinion perpetually enjoining the defendant from enforcing sections 8 and 12 of the act of Alabama approved September 2, 1919, called the Shrimp Act.