## LACOSTE ET AL. *v.* DEPARTMENT OF CONSERVATION OF THE STATE OF LOUISIANA.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 65. Argued October 11, 1923.—Decided January 7, 1924.

1. By right of ownership, and in the exercise of police power, a State
   may regulate the taking of wild animals within its borders, their
   subsequent use, and the property rights that may be acquired in
   them. P. 549.
2. The question whether a state law interferes with or burdens inter-
   state commerce, is determined here with regard to the substance of
   the law; its form, or its characterization by the state legislature or
   courts, do not necessarily control. P. 550.
3. In the exertion of its police power to protect wild animals for the
   common benefit, a State may require payment of a tax upon their
   skins or hides as a condition precedent to transfer of its title to
   the dealer paying the tax. *Id.*
4. The fact that such skins or hides are intended to be shipped out
   of the State without preliminary manufacture does not prevent
   their taxation by the State while in the hands of dealers and before
   they move in interstate commerce. P. 551. *Coe* v. *Errol,* 116
   U. S. 517.
5. Nor does the fact that the law, for certainty of execution, taxes
   the hides or skins in the hands of the dealer who ships them out

74308°—24—35

of the State, or buys them for that purpose or to sell them for manufacture within the State, rather than taxing them in the hands of the trapper or buyer from whom the dealer procures them, constitute it an interference with interstate commerce. P. 551.

6. A law imposing such a tax does not violate due process of law by delegating to an administrative body the authority to ascertain the prices of skins and hides paid by the dealer, determine the time and manner in which the tax shall be paid, and adopt and enforce reasonable rules and regulations not contrary to the act, in relation to the collection of the tax. *Id.*

7. Wild animals taken and possessed with the permission of a State, upon prescribed conditions, may reasonably be distinguished from other classes of property, so that their skins and bodies may be taxed to dealers therein, consistently with equal protection of the laws, without imposing similar taxes on other kinds of property belonging to merchants. P. 552.

8. A State has great latitude in choosing the means for protecting wild life within its borders. *Id.*

151 La. 909, affirmed.

ERROR to a judgment of the Supreme Court of Louisiana which affirmed a judgment dismissing a suit brought by Lacoste et al., to enjoin the State Department of Conservation from enforcing payment of a severance tax.

*Mr. Morris B. Redmann* and *Mr. Edwin T. Merrick,* with whom *Mr. Ralph J. Schwarz* was on the brief, for plaintiffs in error.

*Mr. Paul A. Sompayrac,* Assistant Attorney General of the State of Louisiana, with whom *Mr. A. V. Coco,* Attorney General, was on the brief, for defendant in error.

Mr. Justice BUTLER delivered the opinion of the Court.

Plaintiffs in error are severally engaged in Louisiana in the business of buying, selling, importing, exporting and dealing in hides, skins and furs, some of which come from wild furbearing animals and alligators in that

State.  They brought this suit in the Civil District Court of the Parish of Orleans to enjoin the defendant in error from enforcing the payment of a severance tax levied by Act 135 of the General Assembly of Louisiana, 1920.[1]  By that act, all wild furbearing animals and alligators in the State, and their skins, are declared to be the property of the State until the severance tax thereon shall have been paid.  A dealer is defined to be one who buys such

---

[1] The scope and substance of the act are indicated by its title, which is as follows:

### AN ACT

Declaring the wild furbearing animals and alligators of this State to be the property of the State, and the skins taken from such animals to be the property of the State until there shall have been paid to the State of Louisiana, through the Department of Conservation, the severance tax levied thereon by the provision of this Act; levying an annual license tax on persons, firms, corporations or associations of persons engaged in the buying of hides and skins taken from wild furbearing animals and alligators, and prohibiting the conduct of such business without such license; levying a severance tax of two (2c) cents on the dollar of and on the value of the hides and skins taken from the wild furbearing animals and alligators of this State; fixing the time when, by whom, and under what conditions such severance tax shall be paid; defining the time and making an open season for the trapping of all furbearing animals and the taking and killing of alligators in this State; to allow licensed trappers to hunt wild game without additional license; to prohibit persons, firms, corporations, or associations from shipping or selling hides or skins taken from wild furbearing animals or alligators of this State unless said severance tax is paid thereon; requiring all persons dealing in hides and skins taken from wild furbearing animals and alligators of this State to keep record of all receipts and sales of said hides and skins and to make reports of same to the Department of Conservation; to define trappers, fur dealers, fur buyers, resident and non-resident; to authorize the Department of Conservation to adopt rules and regulations providing for the collecting of the severance tax and licenses herein imposed and regulating the handling and disposition of all hides and skins of furbearing animals and alligators; to provide penalties for the violation of this Act and to repeal all conflicting laws.

skins and hides from either a trapper or a buyer and ships them from the State, or sells them for manufacture into a finished product in the State, or one who ships or carries them out of the State. Section 3 levies a severance tax of two per cent. on the value of all skins and hides taken from wild furbearing animals or alligators within the State, to be paid by the dealer to the State through the Department of Conservation. By other sections, trappers, buyers and dealers are required to pay license fees and to furnish to the department information concerning their respective occupations; an open season is fixed in each year for the taking of furbearing animals and alligators respectively, and such taking is prohibited at other times.

In their complaint, the plaintiffs in error aver that the defendant in error demands and proposes to enforce payment of the severance tax. They declare that they are willing to pay the license fee under protest and without conceding the validity of the act, but that defendant in error has refused to accept such payment or to issue licenses until the severance tax shall have been paid. It is set forth that the defendant in error has formulated rules and regulations requiring all shipments of such skins and hides to have attached thereto a certificate or label issued by the defendant in error, showing the payment of the severance tax, and prohibiting any carrier from accepting such shipments if not so labeled. It is alleged that defendant in error is about to seize and confiscate all shipments of skins and hides to be made by plaintiffs in error, and that such seizure would be illegal and would constitute a taking of property without due process of law, and would inflict upon them irreparable injury and damages, leaving them without remedy therefor.

Defendant in error moved to dismiss the suit on the ground that the complaint failed to state a cause of ac-

tion, and the District Court granted the motion.   The case was taken on appeal to the Supreme Court of Louisiana, and that court denied all contentions of plaintiffs in error, including one that the act is repugnant to the commerce clause of the Constitution of the United States and to the Fourteenth Amendment, and affirmed the judgment.

The wild animals within its borders are, so far as capable of ownership, owned by the State in its sovereign capacity for the common benefit of all of its people.   Because of such ownership, and in the exercise of its police power the State may regulate and control the taking, subsequent use and property rights that may be acquired therein. *Geer* v. *Connecticut,* 161 U. S. 519, 528; *Ward* v. *Race Horse,* 163 U. S. 504, 507; *Silz* v. *Hesterberg,* 211 U. S. 31, 39; *Patsone* v. *Pennsylvania,* 232 U. S. 138, 143; *Kennedy* v. *Becker,* 241 U. S. 556, 562; *Carey* v. *South Dakota,* 250 U. S. 118; *State* v. *Rödman,* 58 Minn. 393, 400.

Whether the tax here involved might be upheld by virtue of the power of the State to prohibit, and therefore to condition, the removal of wild game from the State, we do not now consider; but dispose of the case upon other grounds.   The commerce clause (Article I, § 8, cl. 3) confers on Congress power to regulate interstate and foreign commerce, and therefore such power is impliedly forbidden to the States.   " Even their power to lay and collect taxes, comprehensive and necessary as that power is, cannot be exerted in a way which involves a discrimination against such commerce."   *Pennsylvania* v. *West Virginia,* 262 U. S. 553, 596, and cases cited; *Kansas City, &c. Ry. Co.* v. *Kansas,* 240 U. S. 227, 231; *Brimmer* v. *Rebman,* 138 U. S. 78, 82; *Elmer* v. *Wallace,* 275 Fed. 86, 90; *State* v. *Ferrandou,* 130 La. 1035, 1041.   A State may not enforce any law, the necessary effect of which is to prevent, obstruct or burden interstate commerce.   *Pennsylvania*

v. *West Virginia, supra,* 596, 597, and cases cited. The Supreme Court of Louisiana held that the act here in question is a police regulation and not a revenue act; that its object is to conserve and protect all furbearing ·animals and alligators within its borders, including their skins and hides; that the various·subdivisions of the act relate to that object, and that payment of the tax is a condition precedent to the divestiture of the State's title and its transfer to the dealer paying the tax. The court said, in substance, that the tax is necessarily levied upon dealers, as they have established places of business, make inventories, and are easily accessible for the purpose of collection, and pointed out the difficulties in the way of levying the charge, at the time of the severing of the skins or hides, on itinerant trappers with no fixed place of abode or business.

This Court will determine for itself what is the necessary operation and effect of a state law challenged on the ground that it interferes with or burdens interstate commerce. The name, description or characterization given it by the legislature or the courts of the State will not necessarily control. Regard must be had to the substance of the measure rather than its form. *Looney* v. *Crane Co.,* 245 U. S. 178, 189, *et seq.; Kansas City, &c. Ry. Co.* v. *Kansas,. supra; St. Louis Southwestern Ry. Co.* v. *Arkansas,* 235 U. S. 350, 362; *U. S. Express Co.* v. *Minnesota,* 223 U. S. 335, 346; *Galveston, Harrisburg & San Antonio Ry. Co.* v. *Texas,* 210 U. S. 217, 227. Our examination of this act discloses no reason why the decision of the state court should be disturbed. The legislation is a valid exertion of the police power of the State to conserve and protect wild life for the common benefit. It is within the power of the State to impose the exaction as a condition precedent to the divestiture of its title and to the acquisition of private ownership. Expressly, the tax is imposed upon all skins and hides taken within the

State. This includes those, if any, sold for manufacture in the State as well as those shipped out. In their argument here, plaintiffs in error stated that skins and hides are not manufactured into finished products in Louisiana, and that all are shipped out of the State. But that is no objection to the tax. The State's power to tax property is not destroyed by the fact that it is intended for and will move in interstate commerce. Such skins and hides may be taxed while in the hands of dealers before they move in interstate commerce. *Coe* v. *Errol,* 116 U. S. 517, 525; *Bacon* v. *Illinois,* 227 U. S. 504, 515–516; *Arkadelphia Co.* v. *St. Louis Southwestern Ry. Co.,* 249 U. S. 134, 151. Failure to levy and enforce the tax before the skins and hides reach the dealers does not make the necessary operation and effect of the law an interference with interstate commerce. The imposition of the tax on the skins and hides while in the hands of the dealers is calculated to make certain that all will be found for taxation. No interference with interstate commerce results from the enforcement of the act. It is not repugnant to the commerce clause of the Constitution.

Plaintiffs in error contend that the act violates the due process and equal protection clauses of the Fourteenth Amendment. They argue that legislative authority is improperly delegated to, and that arbitrary power is conferred upon, the Department of Conservation, and that the severance tax is bad because imposed on such dealers in addition to property and license taxes that are imposed on merchants generally.

These contentions are without merit. The act provides " that there be and is hereby levied a severance tax of two (2c) cents on the dollar on and of the value of all skins or hides taken from any wild furbearing animals or alligators within this State, which severance tax shall be paid by the dealer . . . under such rules and regula-tions as shall be determined by the Department of Con-

servation. . . ." That department is authorized to ascertain purchase prices of skins and hides paid by the dealer, to determine the time when and the manner in which the tax shall be paid, and to adopt and enforce rules and regulations not contrary to the act in relation to the collection of the tax. It is not shown that defendant in error has made, or proposes to apply, any unreasonable, capricious or arbitrary rules, regulations or methods of valuation for the purpose of arriving at the amount of the tax or for enforcing its payment. The Fourteenth Amendment does not require equality of taxation within the State or prevent the laying of special or additional taxes upon defined classes of property, so long as the inequality is not based upon arbitrary distinctions. It does not prohibit state legislation imposing a severance tax upon such skins and hides, even if no similar or corresponding tax is levied upon other property of merchants. *St. Louis Southwestern Ry. Co.* v. *Arkansas, supra,* 367, and cases cited. *Singer Sewing Machine Co.* v. *Brickell,* 233 U. S. 304, 315; *Southwestern Oil Co.* v. *Texas,* 217 U. S. 114, 121; *Cook* v. *Marshall County,* 196 U. S. 261, 274. Wild animals permitted by the State to be taken and reduced to possession on prescribed conditions may reasonably be distinguished from other classes of property. Compare *Geer* v. *Connecticut, supra; Ohio Oil Co.* v. *Indiana* (No. 1), 177 U. S. 190, 208. The Fourteenth Amendment does not interfere with the proper exercise of the police power. *Barbier* v. *Connolly,* 113 U. S. 27, 31; *Mugler* v. *Kansas,* 123 U. S. 623, 663; *Powell* v. *Pennsylvania,* 127 U. S. 678, 683; *In re Rahrer,* 140 U. S. 545, 555; *Reinman* v. *Little Rock,* 237 U. S. 171, 177. Protection of the wild life of the State is peculiarly within the police power, and the State has great latitude in determining what means are appropriate for its protection.

The act is not repugnant to the due process or equal protection clauses of the Fourteenth Amendment.

*Judgment affirmed.*