STATE OF NEW MEXICO et
al., Plaintiffs,

v.

Rogers C. B. MORTON, Secretary,
United States Department of the
Interior, et al., Defendants.

Civ. A. No. 74–127.

United States District Court,
D. New Mexico.

Feb. 28, 1975.

Modrall, Sperling, Roehl, Harris &
Sisk, George J. Hopkins, Albuquerque,
N. M., for State of New Mexico, New
Mexico State Livestock Board, Lee S.
Garner, and Claude Foster.

Rogers C. B. Morton, Secretary, U. S.
Dept. of Interior, Victor R. Ortega, U. S.
Atty., James B. Grant, Asst. U. S. Atty.,
Albuquerque, N. M., for the United
States.

Before SETH, Circuit Judge, PAYNE,
Chief Judge and MECHEM, District
Judge.

## MEMORANDUM OPINION

This action came before the three-
judge district court seeking an injunction
against the enforcement of the Wild
Free-roaming Horses and Burros Act, 16
U.S.C. §§ 1331–1340, as being unconsti-
tutional. Jurisdiction of this court is es-
tablished under sections 1331, 2282, and
2284 of Title 28, U.S.C.

The controversy involved here began
when a New Mexico rancher, Kelley Ste-
phenson, discovered several unbranded
and unclaimed burros wandering on his
private land, and also on public land on
which he grazed his cattle pursuant to
federal grazing permits. The burros

were molesting his cattle, and eating the feed supplement he had placed out for the cattle. Mr. Stephenson requested the Bureau of Land Management to remove the burros and was refused. He then contacted the New Mexico Livestock Board. The Board rounded up nineteen burros and subsequently sold them at auction pursuant to the provisions of the New Mexico Estray Law, § 47–14–1 et seq., N.M.Stat.Ann. (Repl. 1966). An "estray" is defined as:

"Any bovine animal, horse, mule or ass, found running at large upon public or private lands, either fenced or unfenced, in the state of New Mexico, whose owner is unknown in the section where found, or which shall be fifty [50] miles or more from the limits of its usual range or pasture, or that is branded with a brand which is not on record in the office of the cattle sanitary board of New Mexico . . . ." § 47–14–1, N.M.Stat.Ann. (Repl.1966).

Subsequent to the auction, the United States asserted the right to possession of the burros under the Wild Free-roaming Horses and Burros Act, and demanded that they be returned to the public domain. This lawsuit ensued.

The federal statute purports to regulate "all unbranded and unclaimed horses and burros on public lands of the United States." 16 U.S.C. § 1332(b). The definition of wild free-roaming horses and burros set out in the regulations promulgated under this section is even broader. Because of our disposition of the case, we do not find it necessary to comment on these regulations. The authority of Congress to regulate these animals must come from a power specifically granted to it in the Constitution. *Afroyim v. Rusk,* 387 U.S. 253, 87 S.Ct. 1660, 18 L.Ed.2d 757. The Congressional findings and policy behind the Act are stated in section 1331:

"Congress finds and declares that wild free-roaming horses and burros are living symbols of the historic and pioneer spirit of the West; that they contribute to the diversity of life forms within the Nation and enrich the lives of the American people; and that these horses and burros are fast disappearing from the American scene. It is the policy of Congress that wild free-roaming horses and burros shall be protected from capture, branding, harassment, or death; and to accomplish this they are to be considered in the area where presently found, as an integral part of the natural system of the public lands."

From these findings, it appears that the Act is grounded in the "Territorial Clause:"

"The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States . . . ." U.S. Const. art. IV, § 3.

Congress is here attempting to exercise complete regulation of wild horses and burros whenever found on public land. This conflicts with both the historical interpretation of the Territorial Clause, and the traditional doctrines concerning wild animals.

 Wild horses and burros do not become "property" of the United States simply by being physically present on the "territory" or land of the United States. The doctrine of the common law, dating back to the Roman law, has been that wild animals are owned by the state in its sovereign capacity, in trust for the benefit of the people. This sovereign ownership vested in the colonial government and was passed to the states. *Geer v. Connecticut,* 161 U.S. 519, 16 S.Ct. 600, 40 L.Ed. 793; *New Mexico State Game Comm'n v. Udall,* 410 F.2d 1197 (10th Cir.), *cert. denied,* 396 U.S. 961, 90 S.Ct. 429, 24 L.Ed.2d 426. Even though the state ownership doctrine has been described as a legal fiction, *Toomer v. Witsell,* 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460, it has never been abrogated. Defendants rely on *Missouri v. Holland,* 252 U.S. 416, 40 S.Ct. 382, 64 L.Ed. 641, to overcome the viability of state ownership. Such reliance is misplaced in that the decision was based on the treaty power of the United States as related to

migratory birds. Here the United States must find authority to regulate wild horses and burros in its power to regulate public lands.

 The Territorial Clause has been described as establishing "full power in the United States to protect its lands, to control their use, and to prescribe in what manner others may acquire rights in them." *Utah Power & Light Co. v. United States,* 243 U.S. 389, 404, 37 S.Ct. 387, 389, 61 L.Ed. 791. The Government may constitutionally prevent the obstruction of free passage across public lands, *McKelvey v. United States,* 260 U.S. 353, 43 S.Ct. 132, 67 L.Ed. 301, and protect the public lands from nuisances on adjoining property. *Camfield v. United States,* 167 U.S. 518, 17 S.Ct. 864, 42 L.Ed. 260.

Three cases have upheld the power of the federal government to kill deer which were damaging federally owned lands through overbrowsing. *Hunt v. United States,* 278 U.S. 96, 49 S.Ct. 38, 73 L.Ed. 200; *New Mexico State Game Comm'n v. Udall, supra; Chalk v. United States,* 114 F.2d 207 (4th Cir.), *cert. denied,* 312 U.S. 679, 61 S.Ct. 449, 85 L.Ed. 1118. *New Mexico State Game Comm'n* even approved the killing of deer as part of a research project to control future population, and thus the possibility of future damage from over-population. The common thread running through the cases decided under the Territorial Clause is that of *protection* of the public lands from damage of some kind. *See also, United States v. Alford,* 274 U.S. 264, 47 S.Ct. 597, 71 L.Ed. 1040, concerning the protection of public lands from fire.

 There is no Congressional finding nor any evidence to indicate that wild horses and burros are damaging the public lands. The statute is aimed at protecting the wild horses and burros, not at protecting the land they live on. Thus, we find that the Wild Free-roaming Horses and Burros Act cannot be sustained as an exercise of the power granted to Congress in Art. IV, § 3 of the Constitution.

 The Government argues in its brief that the Act may be sustained as an exercise of the power granted in the Commerce Clause. No evidence was presented to support this theory; in fact, all the evidence establishes that the wild burros in question here do not migrate across state lines. Further, the Congress made no findings to indicate that it was in any way relying on the Commerce Clause in enacting this statute. This argument must fail.

Since we find the federal act to be unconstitutional, there is no question of preemption of the New Mexico Estray Law. *National Railroad Passenger Corp. v. Miller,* 358 F.Supp. 1321 (D.Kan.), *aff'd,* 414 U.S. 948, 94 S.Ct. 285, 38 L.Ed.2d 205. The defendants are hereby permanently enjoined from enforcing the provisions of the Wild Free-roaming Horses and Burros Act, 16 U.S.C. § 1331 et seq.