## LAMBERT v. WHARF IMPROVEMENT DISTRICT No. 1 OF HELENA.

### Opinion delivered June 20, 1927.

1. MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICTS TO CONSTRUCT WHARF.—Acts 1927, p. 172, authorizing improvement districts for constructing wharves to operate, manage, construct and lease improvements and incur indebtedness thereof, *held* not unconstitutional as imposing a tax, in view of § 4, p. 174, providing that no taxes on real property for the district shall be levied to pay for acts done under the statute.

2. CONSTITUTIONAL LAW—POWERS OF LEGISLATURE.—The Legislature is competent to do anything not prohibited by the Constitution, since the Constitution is not a grant of powers.

3. CONSTITUTIONAL LAW—CONSTRUCTION OF STATUTE.—All doubts as to the constitutionality of a statute must be resolved in favor of its validity.

4.   MUNICIPAL CORPORATIONS—WHARF IMPROVEMENT DISTRICT.—Acts
1927, p. 172, authorizing improvement districts organized for con-
structing wharves to operate, manage, construct and lease
improvements and incur indebtedness therefor *held* not unconsti-
tutional delegation of power to engage in private business.

5.   MUNICIPAL CORPORATIONS—WHARF IMPROVEMENT DISTRICTS.—Crea-
tion of wharf improvement district No. 1, of Helena, *held* valid
where the district was organized under an ordinance on petition
of property owners in compliance with Const. art. 19, § 27, per-
mitting the General Assembly to authorize assessments for local
improvements on consent of a majority in value of property
holders in locality affected.

Appeal from Phillips Chancery Court; *A. L.
Hutchins,* Chancellor; affirmed.

*Moore, Walker & Moore,* for appellant.

*Bevens & Mundt* and *J. G. Burke,* for appellee.

MEHAFFY, J.  Wharf Improvement District No. 1 of
the City of Helena is an improvement district created
by ordinance upon the petition of property owners in
the city of Helena, and was organized "for the purpose
of constructing a wharf on the Mississippi River and
the necessary approaches thereto; said wharf to consist
of adequate mooring places composed of stone, concrete,
wood or steel, located approximately at the foot of
Arkansas Street, on the Mississippi River, in the city of
Helena; and a loading barge of adequate size, to be
moored at that point; the approaches thereto, and storage
places and other necessary equipment; to construct a
wharf-house containing two floors, a railroad track on
an incline from said wharf-house due east along the south
side of Arkansas Street from the said wharf-house to
the said loading barge and wharf on the Mississippi
River; also a roadway to be constructed upon Arkansas
Street from the west line of Natchez Street to the east
line of said wharf-house; also a railroad track from
Elm Street to said wharf-house; together with all neces-
sary cars, cables, hoists and other freight-handling and
loading machinery necessary to make said wharf and
its appurtenances complete."

The improvement district so created was held to be valid, in *Solomon* v. *Wharf Improvement Dist. No. 1,* 145 Ark. 126, 223 S. W. 385.

The Arkansas Legislature, in 1927, passed Act No. 61, which is as follows:

"Section 1. That boards of improvement in municipal improvement districts now existing or hereafter organized in this State for the purpose of constructing wharves for the transfer and interchange of river and rail freight are hereby charged with the duty to operate, manage and control the said improvements. Such boards shall also have the power to lease the improvements, in whole or in part, or otherwise contract for the operation of such improvement, upon such terms as may be deemed by them advisable, and have power to lease from others such equipment as, in the judgment of said board, may be deemed advisable. Such board shall collect moneys due such improvement districts for tolls, wharfage, storage, elevation, rentals and all moneys other than moneys received from collection of the assessment of benefits, and shall keep an accurate and separate account thereof. Such board of improvement shall have control of the disbursement of such moneys, and may therefrom pay costs of operation, maintenance, repairs, replacements, renewals, improvements, depreciation or bonded or other indebtedness, in such times and in such manner as the said board may deem to the best interests of the owners of real property in the district.

"Section 2. In addition to the powers now vested by law in boards of improvement, boards of improvement of improvement districts described in § 1 of this act shall have power to construct and to borrow money with which to construct new and additional improvements necessary, convenient or required for transfer or interchange of any and all commodities. Such board of improvement may issue the notes, bonds or other evidences of indebtedness of such district to evidence such indebtedness, which obligations shall be negotiable, although payable only from a certain fund, and may pledge net revenues

arising from the operation of such new and additional improvements, and mortgage such new and additional improvements to secure the repayment of such borrowed money and interest thereon.

"Section 3.   Boards of improvement of the class described in § 1 of this act shall have power to acquire, by lease or purchase, real estate needed or convenient in the public service rendered by such improvement district; power to grant rights-of-way over any and all properties owned by such district, and power to grant landing rights to persons engaged in water transportation.

"Section 4.   No indebtedness, obligation or liability, or the interest thereon, created or incurred under the provisions of this act, shall at any time be secured or paid by or from any special assessment upon or taxation against the real property of any such improvement district.

"Section 5.   That all contracts heretofore made by any board of improvement of the class described in § 1 of this act, not in conflict with the terms of this act, be and the same are hereby confirmed, approved and ratified.

"Section 6.   If any clause or section of this act shall be held to be unconstitutional, it shall not invalidate the remainder thereof, but the balance of this act shall remain in full force and effect.

"Section 7.   Agriculture and industry of the State will be aided and assisted by the purposes herein contained, and therefore an emergency is hereby declared to exist, and this act being necessary for the preservation of the public peace, health and safety, it shall take effect and be in force from and after its passage."

The appellant, plaintiff below, brought this suit attacking the validity of Act No. 61 for the following reasons:

(1)   That under the Constitution of the State of Arkansas the Legislature is inhibited from delegating the powers undertaken to be delegated by said act to local improvement districts.   (2)   That the said act is and was unconstitutional in that it violates the funda-

mental and underlying principles of our form of Government. (3) That even under the provisions of said act the defendants have no power or authority to enter into the several contracts hereinabove set out. (4) That the said contemplated improvement is not a public improvement, but is an improvement which is related solely in its operation and effect to private business and private interests. (5) That the operation of a grain elevator is not a public improvement but is, from its very nature, a private business. (6) That generally the making of said contracts is *ultra vires,* improper, and an invasion of public agencies into the field of private affairs.

"Plaintiff alleges that, unless enjoined by order of this honorable court, the defendants will execute the contracts aforesaid, or some of the same, whereby the rights of third persons might attach, to the injury of plaintiff's rights."

We deem it unnecessary to set out the testimony taken in this case, because the attack made is on the validity of the act and the power of the Legislature to pass the act. And the appellant's first contention is that this case is controlled by the decision in *Lipscomb* v. *Lenon,* 169 Ark. 610, 276 S. W. 367. That case construed the act passed by the Legislature in 1923 authorizing the formation of an improvement district for the building of an auditorium for public meetings, and, while the court stated that it would be a most desirable improvement, yet it was plainly for the benefit of the whole community, and that it could not and did not confer any peculiar or special benefit upon the real estate assessed and taxed for its construction and maintenance.

That act provided for the assessment of benefits and for the taxing of real estate, and it was held in that case that the act was void, and, among other things, we said:

"Even if it could be said with any plausibility that the building of an auditorium directly and specially benefited the real estate situated within the city of Little Rock, it would strain the wildest imagination to the

breaking point to conceive how such an improvement would be of any direct or special benefit to the real estate situated in Fourche mountains or in Fourche bottoms or to any other real property lying in those country portions of the township included in the district—those beyond the limits of the city of Little Rock.''

It must be remembered that these lands were to be taxed for the purpose of securing money to build the auditorium, and taxed on the theory that these lands would be benefited. Of course it was perfectly plain that the lands mentioned by the court in that case could receive no benefit whatever from the building of an auditorium in the city of Little Rock, and, since real estate can be taxed for local improvements only on the theory that the benefits to the land were equal to or greater than the tax required to be paid on the land, and since it was manifest that these lands could not be benefited at all, the court properly held that the lands not benefited could not be taxed for the purpose of making the improvement. It was also properly held that the improvement was a public improvement and did not benefit the lands sought to be taxed specially.

It is conceded that act No. 61 provides that no taxes shall be levied to pay for the grain elevator, but it is contended in legal principle that this is immaterial, the appellant contending that, if the Legislature has a right to create an improvement from revenues, then it also has the right to create one to be paid from taxation on real estate. The improvement district in this case was organized, and this court has already held that it was valid.

Section 4 of act 61 provides: ''No indebtedness, obligation or liability, or the interest thereon, created or incurred under the provisions of this act, shall at any time be secured or paid by or from any special assessment upon or taxation against the real property of any such improvement district.''

It will be seen that it is expressly provided in the act that no indebtedness, no obligation, no liability or interest thereon, which may be created under the provi-

sions of this act, shall be paid from assessments or taxation on the real property. The act therefore is not void because of any tax or assessment on real property, and we know of no constitutional provision that would prohibit the Legislature from passing the act in question. It has been repeatedly held by this court that the Constitution is not a grant of powers, and that the Legislature may do anything not prohibited by the Constitution. This court has also many times held that all doubts as to the constitutionality of a statute must be resolved in favor of the statute.

It has been said by this court that, in determining whether an act is constitutional, we should look to see, not whether the power is given, but whether in expressed terms or by necessary implication it is forbidden. This court has said:

"Then, when we come to pass upon the constitutionality of an act of the Legislature, we must remember that a State Constitution is not a grant of enumerated powers. Its object is to outline the departments of the Government and apportion its various powers among them. Having vested the lawmaking powers in the Legislature, it possesses that power in an absolute and unlimited degree, unless the restriction is found in the Constitution itself." *State* v. *Martin,* 60 Ark. 343, 30 S. W. 421, 28 L. R. A. 153.

Again it has been said:

"It is not to be doubted that the Legislature has the power to make the written laws of the State, unless it is expressly or by necessary implication prohibited from so doing by the Constitution, and the act assailed must be plainly at variance with the Constitution before the court will so declare." *McClure* v. *Topf & Wright,* 112 Ark. 342, 166 S. W. 174.

The appellant has not called our attention to any particular provision of the Constitution which he claims is violated by the act and to no case holding that a similar act is violative of the Constitution. And, unless there could be found some provision of the Constitution that

either expressly or by implication prohibits the passage of an act like this one, then the Legislature had the power to pass the act, because, as has been said, the Constitution of the State is not a grant or an enumeration of the powers vested in the legislative department, but is a limitation upon the exercise of such powers, and the Legislature can exercise all powers not expressly or by fair implication forbidden by the Constitution.

The only limitation contained in the Constitution with reference to improvement districts in cities and towns is as follows:

"Nothing in this Constitution shall be so construed as to prohibit the General Assembly from authorizing assessments on real property for local improvements in towns and cities, under such regulations as may be prescribed by law, to be based upon the consent of the majority in value of the property holders owning property adjoining the locality to be affected. But such assessments shall be *ad valorem* and uniform."

It was necessary to comply with this provision of the Constitution in the organization of the district. This provision was complied with, and the act was held valid. The only thing this act seeks to do is to give the district, which is already formed, additional authority, but it does not in any way seek to tax the people, and we therefore think that the Legislature had the power to pass the act.

We deem it unnecessary to discuss all the authorities presented by appellee, but we have reached the conclusion that the act does not violate any provision of the Constitution, and the case is therefore affirmed.