(131 So. 291)

**STATE v. MONTELEONE.**

No. 30847.

Nov. 3, 1930.

Rehearing Denied Dec. 1, 1930.

E. M. Heath, of New Orleans, for appellant.

Percy Saint, Atty. Gen., Eugene Stanley, Dist. Atty., and Conrad Meyer, Jr., Asst. Dist. Atty., both of New Orleans, and E. R. Schowalter, Asst. to Atty. Gen. (Richard B. Otero, of New Orleans, and James Guillot, of Derry, of counsel), for the State.

ROGERS, J.

The defendant, Joe Monteleone, was convicted of carrying on the business of wholesale fish dealer without first having procured a license as such from the department of conservation, in violation of section 30 of Act 264 of 1928. This appeal is from the conviction and sentence imposed thereunder.

Appellant's defense against the charge on which he is prosecuted is that the statute on which it is based is unconstitutional, in that it contains two objects and is broader than its title, contrary to section 16 of article 3 of the Constitution of 1921.

Appellant contends that the two objects set forth in the body of the statute are the regulation and conservation of fish, and other aquatic life under the police power and the exercise under section 30 of the state's taxing power for revenue purposes only.

The title of Act 264 of 1928 reads as follows, viz.:

"To conserve and protect fish and all other aquatic life of commercial or economic value, existing in this State excepting alligators, commercial salt water shrimp and oysters; declaring the title to same vested in the State in its sovereign capacity; to regulate the time, manner, extent and conditions under which the taking, possessing, transporting and disposing of same shall be lawful; to fix penalties for the violation of the provisions of this Act and to repeal certain laws or parts of laws in conflict with this Act."

The pertinent portion of section 30 is contained in the following language, viz.:

"Each resident person buying or handling fish secured from commercial fishermen, or from other wholesale dealers for the purpose of resale, whether handled on a commission basis or otherwise, and each resident person shipping fish out of the State of Louisiana, shall be considered a wholesale dealer and shall be required to pay a license in the sum of One Hundred ($100.00) Dollars per annum; and provided, further, that he must submit to the Department of Conservation a list of all buyers or agents who are solely in his employ, whether on a salary or other basis. The

privileges of a wholesaler shall also include the privileges of a retailer without additional license. Wholesalers' licenses shall be issued only to persons who have been bona fide residents of the State of Louisiana for at least two years."

The object of the statute, as disclosed by its title, is to conserve and protect fish and all other aquatic life of commercial or economic value for the benefit of all the people of the state. There are numerous provisions in the act itself regulating the taking and disposing of fish and other aquatic life other than alligators, commercial salt water shrimp, and oysters, and providing the method by which such regulations may be enforced. Thus, section 2 recognizes the state's ownership of all fish as defined in the act. Section 3 places exclusive control of the fisheries and fishing and fishing industry of the state in the department of conservation. Section 15 limits the size of the fish and shellfish which may be taken for commercial purposes; section 29 declares who shall be considered a producer and under what circumstances such producer shall be considered a wholesale dealer; section 30, which we have hereinabove quoted, defines a wholesale dealer and prescribes the amount of license he shall be required to pay; section 31 provides that all licenses issued by the department of conservation under the authority of the statute shall be turned into the state treasury to the credit of the department; section 33 requires wholesale fish dealers to make monthly returns to the department of conservation. And there are other sections in the legislative act requiring inspection and supervision for their enforcement.

█ The fish referred to in the statute are owned by the state in its sovereign capacity for the common benefit of all the people.

This ownership is recognized and established both by the title and the provisions of the act. The property so owned is a part of the state's natural resources, which the state may in the exercise of its police power enact regulations to preserve and conserve. See Lacoste v. Department of Conservation, 151 La. 909, 92 So. 381, affirmed by the U. S. Supreme Court, 263 U. S. 545, 44 S. Ct. 186, 68 L. Ed. 437.

█ The appellant as a dealer in commercial fish is engaged in a business which is peculiarly within the control of the state under its police power. The right of persons to purchase commercial fish for resale is not an absolute right, but a mere privilege which the state may grant or withhold at its pleasure. When the privilege is granted, however, the state may for its exercise exact such charges and impose such conditions as it may deem necessary to secure the preservation and conservation of its property.

█ Notwithstanding the charge exacted by the statute from dealers in commercial fish is referred to therein as a "wholesale dealer's license," the charge in question is in the nature of a severance tax levied upon the dealers, and is a separate and distinct levy from the license or property taxes imposed upon merchants generally. It is not a tax for revenue, but a condition prescribed by the sovereign for the divestiture of its title and its transfer to the person paying the charge. The license is not the subject for independent legislative action, but is one of the means provided by the statute to accomplish the purpose for which it was enacted, i. e., the conservation and protection of the state's aquatic life of a commercial or economic value.

██ Appellant's contention that the body of the statute is broader than its title is based on his theory that the statute contains two distinct objects. Our discussion of appellant's

other contention is also applicable to his present contention. As we have hereinbefore shown, the primary purpose of the statute under review is to conserve and protect one of the state's natural resources. There is no conflict nor inconsistency among its provisions. The obligations, duties, powers, and details set forth in the legislation are only separate and distinct parts of the whole plan whereby its primary purpose is to be accomplished. The title, in order to meet the constitutional demand, is not required to mention the means, methods, or instruments by which it is intended to accomplish its general purpose. It is sufficient that it goes into the subject so as to place all persons in interest upon reasonable notice to make inquiry into the statute itself. White Oil Corp. v. Flanagan, 153 La. 837, 96 So. 675.

Our conclusion is that Act No. 264 of 1928 is not unconstitutional in the respects set up and argued by appellant.

For the reasons assigned, the conviction and sentence appealed from are affirmed.