## PEARLSTONE–ASH GROCERY CO. v. REMBERT NAT. BANK OF LONGVIEW et al.

### No. 5395.

Court of Civil Appeals of Texas.
Texarkana.

Dec. 28, 1939.

Rehearing Denied Jan. 18, 1940.

Coke & Coke and Irving Goldberg, all of Dallas, and Taylor & Storey, of Longview, for appellant.

W. H. Sanford, of Dallas, Hurst, Leak & Burke, of Longview, and Conan Cantwell, of Dallas, for appellees.

JOHNSTONE, Chief Justice.

Pearlstone-Ash Grocery Company brought this suit against W. R. Wickham, Carrol Wickham, Kenneth Wickham and

Roy Wickham (called "the Wickham defendants), against the Rembert National Bank of Longview, and against Dublin Grocery Company. Plaintiff alleged against Wickham defendants that it had sold said defendants, on open account over a period of some thirty-two months, goods of an aggregate value, and at an aggregate agreed price, of $281,721.77, less discounts totaling $5,235.56, that the Wickham defendants had paid on said account only $266,597.02, leaving a balance due of $9,889.19, for which judgment was sought. Against the Dublin Grocery Company plaintiff alleged that the Dublin Grocery Company had purchased the stock of merchandise and fixtures of the Wickham defendants' stores without compliance with the Bulk Sales Law of Texas (R.S.1925, Article 4001) and by reason thereof was accountable to plaintiff for such merchandise and fixtures and the proceeds thereof, to the amount of plaintiff's claim against the Wickhams. Against the bank, in the alternative, it was alleged that plaintiff's salesman, A. C. Numsen, Jr., had received from the Wickham defendants from time to time during the period in question, checks drawn by said defendants and payable to the plaintiff aggregating $14,566.65 (fifty-one of which, aggregating $11,027.18, were drawn on the Rembert National Bank itself, and twelve of which, aggregating $3,539.47, were drawn on Everett Banking Company); that said salesman without authority endorsed said checks, which were the property of plaintiff, and the proceeds were paid to him by the defendant bank upon such unauthorized endorsement, and were misappropriated by him. It was further alleged, as against the bank, that said salesman, A. C. Numsen, Jr., had received from the Wickham defendants eighteen other checks, payable to himself individually, aggregating $4,654.27, the proceeds of which were paid to said Numsen by the bank with knowledge that they belonged to plaintiff. Plaintiff sought judgment against the bank for the total amount of all of the above-mentioned checks "or such sum as the evidence shows its loss to be."

The Wickham defendants denied plaintiff's allegation generally and specifically; alleged that they had not only paid plaintiff in full for all goods purchased but had overpaid. By way of cross action these defendants alleged that during the period in question they had operated several grocery stores in Longview, Gladewater and

Greggton, Texas, and purchased from plaintiff through two salesmen, A. C. Numsen, Jr., and another, groceries and merchandise in the total amount of $281,721.77; and had paid plaintiff in checks and cash $285,710.69, for which they had received credit on plaintiff's books for only $266,597.02, the difference of $19,113.67 having been paid by the checks above referred to, for which they had not received credit; that taking into account said checks and the discounts of $5,235.56 allowed by plaintiff, they had overpaid their account $9,224.48. The Wickham defendants further alleged that plaintiff's salesman Numsen, within the scope of his authority, had allowed them discounts totaling $12,496.03 in addition to the $5,235.56 allowed as discounts by the plaintiff; and that plaintiff had falsely notified the Dublin Grocery Company (to whom said defendants had made a sale of one of their stores) that defendants were indebted to plaintiff in the sum of $9,889.19, and thereby induced it to withhold said amount from them, whereby they were entitled to legal interest from the date of such notice. The Wickham defendants sought judgment against the plaintiff for the alleged overpayment and unallowed discounts, totaling $21,720.51, with interest; and for said item of interest on the $9,889.19 which plaintiff caused the Dublin Grocery Company to withhold from the Wickhams.

The defendant Rembert National Bank answered by general denial and alleged specially that A. C. Numsen, Jr., was actually or impliedly authorized to endorse the checks which he did endorse, and to receive the proceeds thereof, or if not, that he was apparently so authorized, and was held out by plaintiff as having such authority; that he was given wide latitude and plenary authority in handling plaintiff's business, and his acts, including those here in question, were ratified and adopted by the plaintiff; that plaintiff knew of the course of conduct whereby Numsen endorsed the checks and received the proceeds, or, if it did not, its ignorance was the result of its own negligence.

By supplemental petitions plaintiff alleged (as to the defendant bank) that the bank was negligent in not determining that Numsen had no authority to endorse checks and receive the proceeds thereof, and in not making inquiry as to the extent of his authority; and (as to the Wickham defendants) that the discounts allowed said de-

fendants, aggregating $5,235.56, were usual and customary; denied the authority of their salesman to allow any other or additional discounts; alleged that said defendants had paid only $266,597.02; and that the additional amount claimed by said defendants to have been paid was represented by the checks endorsed and cashed by Numsen without authority, which checks did not constitute any payment to plaintiff; and that if said defendants suffered loss thereby, it was occasioned by their own negligence in not determining the amount of merchandise which they had received, and the correct amount owed therefor.

The case was tried to a jury. After all parties announced ready for trial, the Dublin Grocery Company was dismissed from the case on motion of plaintiff. The evidence for the most part was undisputed. It appears without controversy that during the period from March 26, 1932, to December 1, 1934, plaintiff delivered groceries to the Wickham defendants. to the amount (before discounts) of $281,721.77, allowed usual and customary discounts aggregating $5,235.56, and charged said defendants the net total of $276,486.21. It further appears that the dealings between plaintiff and said defendants were handled, on behalf of plaintiff, by its salesman A. C. Numsen, Jr., who was authorized to, and did sell groceries to said defendants, deliver to them invoices or "settlement statements," and make all collections from them for the groceries so sold; that in making these collections he had authority to accept cash or checks; that during said time said defendants had made payments to plaintiff totaling $279,545.01, thereby overpaying plaintiff in the sum of $3,058.-80; that all payments made by said defendants were by checks delivered to said salesman; that all the checks except $4,654.27 were payable to the order of Pearlstone-Ash Grocery Company, the last-mentioned amount being the aggregate of eighteen checks issued on and after July 7, 1934, and which were made payable to the salesman, A. C. Numsen, Jr.; that sixty-three of the checks made payable to the plaintiff, over a period beginning February 10, 1933, and ending June 23, 1934, aggregating $14,566.65 in amount, were endorsed in plaintiff's name by A. C. Numsen, Jr., and the proceeds received by him from the defendant bank; that he also endorsed and cashed at said bank the eighteen checks made payable to him individually; that he

accounted to the plaintiff for a part, but not all, of the proceeds of the checks cashed by him; that the amount actually received by plaintiff from its said salesman and credited to the Wickham defendants, being the aggregate of all the Wickham checks turned over to it in kind, together with that part of the proceeds of the checks cashed by the salesman for which he accounted to his employer, was $266,120.03; that said defendants were also given credit for $476.99 for merchandise returned, leaving a net unpaid balance (according to plaintiff's books) of $9,889.19; that the salesman, Numsen, was expressly authorized by the plaintiff to collect either checks or cash on its behalf, but that he was never expressly authorized to endorse on its behalf checks made payable to it, and that plaintiff's managing officers had no actual knowledge that he did so, until after June 23, 1934. It further appears without controversy that the aggregate of the invoices or "settlement statements" delivered to the Wickham defendants over the entire period of their dealings with plaintiff were not in accordance with the aggregate charges actually made by plaintiff, representing the amount of groceries actually delivered; that during the part of the period when the salesman Numsen was handling the transactions, the "settlement statements" were in some instances "padded," duplicated or fictitious, and in other instances incorrectly totaled; that the aggregate amount of the charges to the Wickham defendants as shown by the "settlement statements" over the entire period in question (not taking account of discounts allowed and noted thereon) was $304,119.01, or $22,397.24 more than the actual gross. amount of groceries sold and charged for by the plaintiff; of which difference some $6,000 was due to errors in addition on the face of the statements themselves, the balance representing unidentified duplications, padding, or fictitious charges; and that the aggregate of discounts allowed the Wickham defendants by the salesman Numsen, as noted on said settlement statements, each signed. by him, amounted to $17,731.69. It further appears that payment. to the Wickhams of the sum of $9,889.19, due as a part of the purchase price of a sale of goods, wares and merchandise by the Wickham defendants to Dublin Grocery Company, was held in suspense by the latter company by reason of plaintiff's claim that the Wickhams were indebted to plaintiff in that amount.

Forty-two special issues were submitted to the jury, in answer to which the jury found: That the Wickham defendants had overpaid their account; that their loss was proximately caused by their own negligence in failing to determine the amount of merchandise received, and in failing to determine the correct amount owed plaintiff; that the salesman Numsen was authorized to make such discounts as he saw fit and proper; that he was not authorized to endorse the checks payable to the plaintiff; that plaintiff has not suffered any loss by reason of his doing so; that the defendant bank did not know that he was not so authorized and was not negligent in failing to determine his want of authority; that Numsen misappropriated and misapplied a part of the proceeds of the checks but the bank had no knowledge thereof, nor of any facts putting it on inquiry; that the plaintiff did not fail "to keep such books and records of the sale of groceries, and collections of moneys by A. C. Numsen, Jr., as would have kept it advised in the premises" nor to "verify the status of accounts as between it and the Wickham defendants from time to time"; that the plaintiff permitted Numsen to represent it in all its business dealings with the Wickham defendants, and from time to time received and accepted from him proceeds of checks cashed by him, without inquiry, but was not negligent in either of those respects; that Numsen was not authorized to receive the proceeds of the checks cashed by him, payable to the plaintiff, but had apparent authority so to do; and that plaintiff did not give its salesman Numsen authority to receive checks payable to himself for merchandise it had sold.

The trial court rendered judgment (1) that plaintiff take nothing by reason of its claim against the Wickham defendants; (2) that the Wickham defendants recover against the plaintiff $3,048.80 overpaid, with interest, and $1,058.10, being interest on the $9,889.19 withheld from them by Dublin Grocery Company on account of plaintiff's claim; (3) denying the Wickham defendants recovery on their claim for additional discounts; (4) denying the plaintiff any recovery against the defendant Rembert National Bank, except to the extent of that part of the proceeds of the checks drawn on the Everett Banking Company, payable to the plaintiff and endorsed by the salesman Numsen, which were not accounted for by him to the plaintiff, the amount thereof being $2,893.33, for which, with interest, judgment was in favor of the plaintiff against the bank.

All parties appealed. The three appeals were properly incorporated in one transcript which, together with the statement of facts, was duly filed in this court and given docket No. 5395.

The matter first to be determined consists of motions to strike from the record the briefs filed in this court by appellant Pearlstone-Ash Grocery Company, and by the Wickham appellants. The Wickhams, appellees in the appeal of appellant Pearlstone-Ash Grocery Company, filed a motion to strike said appellant's brief (in so far as relates to matters between said appellant and said appellees, being all the brief except that part which relates to matters between Pearlstone-Ash Grocery Company and the Rembert National Bank) because said brief was not filed within the time provided by law, and not filed until after the cause had been submitted and that appellees had no time and not sufficient time to answer same. And Pearlstone-Ash Grocery Company, appellee in the appeal of the Wickham appellants, filed its motion to strike said appellants' brief (all the same relates to matters between said appellants and said appellees) because said brief was not filed within the time provided by law. The facts relating to the motions show that on October 28, 1938, the attorneys of record for all parties were duly notified that the case had been set for submission for March 16, 1939. The Wickham appellants filed their brief March 1st. The appellant Pearlstone-Ash Grocery Company filed its brief March 17th. The motion of the Wickhams to strike the brief of appellant Pearlstone-Ash Grocery Company was filed March 18th. The motion of Pearlstone-Ash Grocery Company to strike the brief of the Wickham appellants was filed on March 20, 1939.

Revised Statutes of 1925, Article 1848, as amended by Acts 1935, 44th Legislature, page 225, Chapter 90, Section 1, Vernon's Ann.Tex.Civ.Statutes, art. 1848, governs the time in which to file briefs in the Courts of Civil Appeals. It provides: "Cases upon the trial docket of said Court which have not been advanced as provided by law, shall be set for submission eight weeks ahead of the date of submission and the parties or their attorneys of record notified of the date for submission, as provided in Section 1 of this Act. The appellant,

or plaintiff in error, shall have thirty days from the date of such notice in which to file his brief in the Court of Civil Appeals and the appellee's brief shall be so filed at least five days before the date set for submission. Upon good cause shown, the Court of Civil Appeals may grant either or both parties further time for the filing of their respective briefs, and may extend the time for the submission of the case."

We think the statute as amended purposes to require that the case shall be set for submission and notice thereof given to the parties or their attorneys of record at least eight weeks (fifty-six days) prior to the date of submission, and that the appellant shall have thirty days from the first day of the eight week period immediately preceding the date of submission within which to file his brief; that where the case has been set for submission and notice thereof given more than eight weeks prior to the date of submission, the appellant shall not be limited to thirty days from date of such notice, but shall have thirty days from the first day of the eight week period immediately preceding the date of submission within which to file his brief. Gulf Production Co. v. Kishi, Tex.Civ.App., 105 S.W.2d 733. The present case was set for submission and notice thereof given October 28, 1938, 139 days prior to the date of submission, March 16, 1939. Neither party contends that the other party as appellant was required to file his brief within thirty days from October 28, 1938. Each motion is based upon the fact that the briefs attacked were not filed within thirty days from the first day of the eight week period immediately preceding the date of submission. The first day of said eight week period was January 19, 1939. The thirty days from that date within which appellants were required to file their brief expired February 18, 1939. The Wickham appellants did not file their brief until March 1st, being forty-one days after the first day of said eight week period, or eleven days after the expiration of the time required by statute. The appellant Pearlstone-Ash Grocery Company did not file its brief until March 17th, being fifty-seven days after the first day of said eight week period, or twenty-seven days after the expiration of the time required by statute, and one day after the case had been submitted. No motion was made by either of said appellants asking for postponement of submission and extension of time within which to file briefs, nor has there been shown "good cause", as that term is shown in the statute, upon which to predicate such a motion, had one been made. Graves v. Conn. Gen. Life Ins. Co., Tex.Civ.App., 104 S.W.2d 121. Therefore it becomes our duty to grant each of the motions to strike briefs. The briefs of appellant Pearlstone-Ash Grocery Company and of the Wickham appellants are accordingly stricken from the record.

We have examined the record for fundamental error and find none, hence the judgment of the trial court in so far as it relates to matters between said parties is affirmed. Slama v. Mills, Tex.Civ.App., 116 S.W.2d 426. This leaves for determination only the matters between the appellant Rembert National Bank and its appellee Pearlstone-Ash Grocery Company.

The Rembert National Bank paid over to the salesman Numsen over a period beginning February 10, 1933, and ending June 23, 1934, the proceeds of sixty-three checks drawn by the Wickham defendants payable to the order of Pearlstone-Ash Grocery Company and endorsed "Pearlstone-Ash Grocery Company by A. C. Numsen, Jr." As above stated, Rembert National Bank itself was the drawee in fifty-one of these checks. As to those checks the bank was relieved from liability to plaintiff under the principles announced in Fidelity & Deposit Co. of Maryland v. Fort Worth National Bank, Tex.Com.App., 65 S.W.2d 276, and no complaint is made by the plaintiff on this appeal of the judgment in respect of those checks.

Twelve of said checks, aggregating $3,539.47 over a period beginning December 6, 1933, and ending June 23, 1934, were drawn on Everett Banking Company of Gladewater, Texas. As to those checks the trial court, under the authority of the above cited case, held that the appellant bank was liable to the plaintiff, except as to the amount of the proceeds thereof paid over to said salesman which could be and were traced into the hands of plaintiff itself. The portion of the proceeds of said checks which was unaccounted for by the salesman to the plaintiff amounted to $2,893.33, for which amount with interest the trial court rendered judgment in favor of the plaintiff against the appellant bank. The jury found, and its finding was supported by testimony, that said salesman was not expressly authorized by the plaintiff to en-

dorse checks payable to its order. The jury also found that said salesman did not have actual authority to receive the proceeds of said checks but did have apparent authority to do so. In rendering judgment against the bank the trial court disregarded the finding of the jury as to apparent authority.

We think the evidence amply sustains the finding of the jury as to such apparent authority, and, therefore, that the trial court was in error in disregarding it; also that the jury finding that said salesman did not have actual authority to receive the proceeds of said checks was contrary to the undisputed evidence and should have been disregarded by the trial court, the bank having duly moved in that behalf under Article 2211, Vernon's Ann.Civ.St. art. 2211, and that the trial court should have rendered judgment in favor of the bank based upon both the undisputed evidence of actual authority and the jury finding as to apparent authority. The facts of this case with respect to the agent differentiate it from the Fidelity & Deposit Company case.

As to actual authority, plaintiff's managing officer, W. M. Ash, testified that "It was satisfactory with Pearlstone-Ash Grocery Company that persons who were indebted to them could pay Mr. Numsen in cash on behalf of the corporation." As to apparent authority, it appears without controversy that over the ten months' period from February 10, 1933, to December 6, 1933 (on which last-mentioned date the first of the checks here mentioned was cashed drawn on the Everett Banking Company), said salesman had presented to the bank and been paid the proceeds of thirty-eight checks drawn on the Rembert National Bank payable to plaintiff's order and endorsed by said salesman. Whether or not the evidence is sufficient to sustain a finding of apparent authority to receive proceeds of, for example, the first check endorsed and cashed by said salesman on February 10, 1933, we think the long continued course of conduct, over a period of ten months, during which time a large number of checks so endorsed had been cashed by the bank without complaint by the plaintiff, clothed the salesman with apparent authority to continue such course of conduct. The finding of the jury that the salesman was not authorized to endorse checks was immaterial. Plaintiff is not sought to be charged with liability on a contract of endorsement. Conceding that the checks in question were the property of the plaintiff, and that it was the duty of the bank to pay the proceeds thereof to the plaintiff, the bank performed that duty when it paid the proceeds to an agent of the plaintiff having actual and apparent authority to receive the same on its behalf. Therefore the judgment in favor of the Pearlstone-Ash Grocery Company against the Rembert National Bank should be reversed and judgment rendered that the plaintiff take nothing against the bank.

The judgment of the trial court is affirmed in part and reversed and rendered in part.