FUGETT *v.* STATE.

4386          188 S. W. 2d 641

Opinion delivered July 2, 1945.

Appellant *pro se.*

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

ROBINS, J. Appellant was convicted by the lower court of violating § 5957 of Pope's Digest of the laws of Arkansas, which is as follows: "Hereafter any person fishing for commercial purposes in the waters of this state shall immediately and carefully return to the waters from which the same are taken any game fish

commonly known as trout, bass, crappie, bream or perch, goggle-eye, jack salmon, pike or any other fish, the sale of which is prohibited, caught or captured in any type of tackle being used by such person. Persons fishing for or dealing in commercial or rough, saleable fish, such as cat, buffalo, drum, and carp are prohibited from displaying at their fish docks or places of business, or holding in their live boxes, fish that cannot be sold in this state, and commercal fishermen and fish dealers are prohibited from giving away undersized commercial fish or game fish species. Any person violating any provision of this section shall be deemed guilty of a misdemeanor and on conviction shall be fined in any sum not less than twenty-five dollars ($25).''

Appellant, a licensed commercial fisherman, was found in possession of a catfish less than 16 inches long. Sale of a fish of this size is forbidden by law (sub-division K, § 13, Act 146 of the General Assembly of Arkansas, approved March 4, 1943), and appellant was required (§ 5957, Pope's Digest) to throw it back into the water as soon as he caught it. It was stipulated in the trial below that the game warden found appellant in possession of a catfish under 16 inches in length, and that appellant did not intend to sell this fish. It is conceded by appellant that he violated the law requiring commercial fishermen to throw such a fish back into the water, but it is argued by him that this law is unconstitutional in that it denies equal rights, privileges and immunities to licensed commercial fishermen and non-commercial fishermen. He contends that, since non-commercial fishermen may catch and consume such fish, the privilege of doing so may not be denied to him simply because he has obtained license to fish for commercial purposes.

Fish and game, except those in privately owned ponds, are the property of the state (§ 5835, Pope's Digest), and it has been universally held that the state may regulate the taking thereof. The state, in promulgating these regulations, may not make any arbitrary discrimination against any class of citizens, but the state, in licensing commercial fishermen, has the power to attach

to the license any reasonable condition or regulation as to the manner in which the fishing is to be done or the size and kind of fish to be taken from the waters of the state. *Sherrill* v. *State,* 84 Ark. 470, 106 S. W. 967; *Fritz* v. *State,* 88 Ark. 571, 115 S. W. 385; *State* v. *Adams,* 142 Ark. 411, 218 S. W. 845.

In the case of *Tuttle* v. *Wood,* 35 S. W. 2d 1061, the Court of Civil Appeals of Texas had under consideration the validity of statutes which regulated, and in some cases prohibited, the exploitation of fish in certain waters in that state for commercial purposes. In upholding the challenged laws the court said: "It must be conceded that the state has the inherent power, to be exercised through the Legislature, to regulate the taking of fish and shrimp from its public waters, and to prohibit from time to time such taking, in order to conserve those natural resources for the ultimate benefit of all the people. So long as that power is reasonably exercised by the legislative authority, no other branch of the government may interfere therewith. Ordinarily, the necessity or reasonableness of regulation or prohibition in specific cases, for the time being, are left to the discretion of the Legislature, whose determination thereof, in the exercise of a sound discretion, is conclusive upon the courts. The power to originate such legislation carries with it the further power to change existing laws, including regulation and prohibition, to meet changing conditions, and this power is not lost simply because those affected have been licensed to operate under and by virtue of the conditions of prior laws. They were charged with notice that under the grant of power the Legislature could further legislate upon the subject. So may it be said that the Legislature may separate the rights of those engaged in the wholesale business of taking and marketing the products of public waters, from the rights of the individual members of the public, and may exclude the former from, while admitting the latter to, the privilege of fishing in those waters, as is sought to be done by the statutes here in question. The rights of the general public are paramount to the rights of those who would commercialize those resources for profit."

A question somewhat similar to the one involved in the case at bar was considered by the Supreme Court of Louisiana in the case of *State* v. *Monteleone,* 171 La. 437, 131 So. 291. In that case it was contended by Monteleone that the statute requiring a dealer in commercial fish to obtain license from the state was unconstitutional. In sustaining the constitutionality of the law the court said: "The fish referred to in the statute are owned by the state in its sovereign capacity for the common benefit of all the people. This ownership is recognized and established both by the title and the provisions of the act. The property so owned is a part of the state's natural resources, which the state may in the exercise of its police power enact regulations to preserve and conserve. See *Lacoste* v. *Department of Conservation,* 151 La. 909, 92 So. 381, affirmed by the U. S. Supreme Court, 263 U. S. 545, 44 S. Ct. 186, 68 L. Ed. 437. The appellant as a dealer in commercial fish is engaged in a business which is peculiarly within the control of the state under its police power. The right of persons to purchase commercial fish for resale is not an absolute right, but a mere privilege which the state may grant or withhold at its pleasure. When the privilege is granted, however, the state may for its exercise exact such charges and impose such conditions as it may deem necessary to secure the preservation and conservation of its property."

The wisdom and propriety of statutory enactments are matters to be determined solely by the legislative branch of the government. Courts are not authorized to strike down a law enacted by the General Assembly unless it clearly appears that the law contravenes some provision of the constitution; and, in case of doubt as to the constitutionality of a statute, the doubt must be resolved in favor of the validity of the law. *Cairo & Fulton Railroad Company* v. *Parks,* 32 Ark. 131; *Smithee, Land Commissioner,* v. *Garth,* 33 Ark. 17; *Carson* v. *St. Francis Levee District,* 59 Ark. 513, 27 S. W. 490; *State* v. *Moore,* 76 Ark. 197, 88 S. W. 881, 70 L. R. A. 671; *St. Louis, Iron Mountain & Southern Railway Company* v. *State,* 99 Ark. 1, 136 S. W. 938; *Jackson County* v. *Nuckolls,* 102 Ark. 166, 143 S. W. 1065; *State ex rel. Kimber-*

*lite Diamond Mining & Washing Company* v. *Earle W. Hodges, Secretary of State,* 114 Ark. 155, 169 S. W. 942, L. R. A. 1916F, 122; *Cumnock* v. *Alexander,* 139 Ark. 153, 213 S. W. 767; *Lambert* v. *Wharf Improvement District No. 1 of Helena,* 174 Ark. 478, 295 S. W. 730; *Cobb* v. *Parnell,* 183 Ark. 429, 36 S. W. 2d 388; *Buzbee* v. *Hutton,* 186 Ark. 134, 52 S. W. 2d 647; *Kelso* v. *Bush,* 191 Ark. 1044, 89 S. W. 2d 594; *State* v. *Gray,* 192 Ark. 1045, 96 S. W. 2d 447; *Dobbs* v. *Holland,* 140 Ark. 398, 215 S. W. 709; *Hill* v. *Echols,* 140 Ark. 474, 215 S. W. 882; *Replogle* v. *Little Rock,* 166 Ark. 617, 267 S. W. 353, 36 A. L. R. 1333; *Adams* v. *Spillyards,* 187 Ark. 641, 61 S. W. 2d 686, 86 A. L. R. 1493; *Wiseman* v. *Phillips,* 191 Ark. 63, 84 S. W. 2d 91; *Gentry* v. *Harrison,* 194 Ark. 916, 110 S. W. 2d 497; *Beaty* v. *Humphrey, State Auditor,* 195 Ark. 1008, 115 S. W. 2d 559; *Taylor* v. *J. A. Riggs Tractor Co.,* 197 Ark. 383, 122 S. W. 2d 608; *McCarroll, Commr. of Revenues,* v. *Clyde Collins Liquors, Inc.,* 198 Ark. 896, 132 S. W. 2d 19; *Newton, County Judge,* v. *Edwards,* 203 Ark. 18, 155 S. W. 2d 591; *City of Little Rock* v. *Smith,* 204 Ark. 692, 163 S. W. 2d 705.

We cannot say that requiring commercial fisherman to throw back into the water small fish caught by them is arbitrary—even though the effect of this is to deny to commercial fishermen the right to catch such fish for their own use. Commercial fishermen ordinarily use much more effective tackle and equipment than the non-commercial fishermen, and are generally more skilful fishermen than those who do not fish for gain. They are, therefore, capable of taking fish in much greater quantities than fishermen for sport. Furthermore, if commercial fishermen were permitted to catch and have in their possession these small fish for any purpose, it might be difficult to show that such fish were not caught by the fishermen for their own use. These considerations may well have led the Legislature to conclude that, in the interest of conservation of wild life, it was expedient to enact such a law as the one appellant stands convicted of violating.

We conclude that the statute here challenged did not create such an arbitrary or illegal discrimination

against appellant as to violate the provisions of the state and federal constitutions requiring equal rights, privileges and immunities for all citizens.

The judgment of the lower court is accordingly affirmed.