The Honorable James C. Scott State Senator 321 State Highway 15 North Warren, Arkansas 71671
Dear Senator Scott:
This is in response to your request for an opinion on two questions relating to the Ashley County Hospital Board (the "Board"). Your first question is:
 Are ex officio members of the Board considered part of the "governing body" for purposes of A.C.A. § 25-19-106(c)(2)(A) (Repl. 1992)?
The cited statute, which is part of the Freedom of Information Act of 1967 (the "Act"), and which specifies the persons who may be present during an executive session of a governing body, provides:
 Only the person holding the top administrative position in the public agency, department, or office involved, the immediate supervisor of the employee involved, and the employee may be present at the executive session when so requested by the governing body, board, commission, or other public body holding the executive session.
In my opinion, an ex officio member of the Board is a member of the "governing body, board, commission, or other public body holding the executive session" for purposes of A.C.A. § 25-19-106(c)(2)(A), and thus properly may be present during an executive session of the Board held in compliance with the Act. One source defines "ex officio" as follows:
 From or by virtue of the office. A right or privilege in an office arising from one's status as the holder of another office, for example, the right of a justice of the peace to membership on a town board.
BALLENTINE'S LAW DICTIONARY 438 (3d ed. 1969).
In my view, one who is a member of the Board by virtue of his occupancy of another office or position is no less a member, for purposes of A.C.A. § 25-19-106(c)(2)(A), than one who has been elected, appointed, or otherwise chosen to be a member independently, without regard to any other status or position.[1] This opinion is supported by and consistent with Op. Att'y Gen. 95-227, recently issued by this office, which concluded that a mayor, as an ex officio member of a city council, likely is a member of the council for purposes of the open meeting provisions of the Act. See also Gibson v. City of Trumann, 311 Ark. 561,562, 845 S.W.2d 515 (1993).
Your second question is:
 Are contracts and leases entered into by (or assigned to) the Board in connection with hospital operations subject to Amendment 10 to the Arkansas Constitution? Could contracts and leases entered into by (or assigned to) the Board be taken out of the purview of Amendment 10 by inserting a clause limiting recourse under the contract or lease to hospital revenues? Would such a provision also remove the contract or lease from the purview of Amendment 13?
In connection with your second question, you state the following:
 Ashley County Hospital Board is a county hospital board organized and appointed pursuant to Ark. Code Ann. § 14-263-101 et seq. to manage, control and operate a hospital in Ashley County. In carrying out its mission, the Board will be purchasing certain assets and assuming certain liabilities from Crossett Health Foundation which owns and operates an existing private hospital in Crossett, Arkansas. Some of the assets and liabilities consist of multi-year contracts and leases covering equipment used in the hospital or services supplied to the hospital. The board will take an assignment of certain contracts and leases and will subsequently enter into other contracts and leases for goods or services. In connection with such assignments and subsequent contracts, the board needs to know whether multi-year contracts and leases can be entered into or assumed if they contain a clause limiting recourse under the contract or lease to hospital revenues (and not the general revenues of the county) and if such a provision would also take the contract out of the purview of Amendment 13 to the Arkansas Constitution. That would certainly seem to be the case, since restricting recourse under the contracts to hospital revenues keeps the risk within the hospital's control and does not lend the county's credit to the transaction. This appears, further, to be the practice in other county hospitals.
It must be emphasized initially that the Board is not a legal entity separate from the county, and thus has no power to acquire property, by lease or otherwise, in its own name and for its own account. Warren v.Wheatley, 231 Ark. 707, 331 S.W.2d 843 (1960); Op. Att'y Gen. 94-038, 92-101. The Board may, of course, acquire property in the name of and for the account of the county, although some questions remain concerning which acquisitions, if any, must first be approved by the quorum court.See Op. Att'y Gen. 94-038. Your inquiry does not, however, appear to implicate those questions, and I do not address them further herein.
Amendment 10 amended Ark. Const. art. 12, § 4, to add, in relevant part, the following:
 The fiscal affairs of counties, cities and incorporated towns shall be conducted on a sound financial basis, and no county court or levying board or agent of any county shall make or authorize any contract or make any allowance for any purpose whatsoever in excess of the revenue from all sources for the fiscal year in which said contract or allowance is made; nor shall any county judge, county clerk or other county officer, sign or issue any scrip, warrant or make any allowance in excess of the revenue from all sources for the current fiscal year. . . .
With respect to the first part of your second question, it is my opinion that transactions undertaken by the Board on behalf of the county are subject to Ark. Const. art. 12, § 4, unless some other factor (such as discussed below) makes the constitutional provision inapplicable in the particular circumstances. As noted above, the Board is not a legal entity separate from the county. "Exclusive jurisdiction over . . . county owned hospitals rests with the county judge and quorum court." Bell v. CrawfordCounty, 287 Ark. 251, 697 S.W.2d 910 (1985). Accordingly, the fiscal affairs of the Board and the hospital are the fiscal affairs of the county. To conclude otherwise could invite evasion of Ark. Const. art.12, § 4, by the simple expedient of delegating the management of county fiscal affairs to instrumentalities of the county other than the quorum court.
With respect to the second part of your second question, it should be noted that a line of opinions of the Supreme Court of Arkansas can be interpreted as holding that lawfully issued revenue obligations, payable solely from amounts arising from the activity financed by the obligations, are not subject to the limitations of Ark. Const. art. 12, § 4. Eaton v. McCuen, County Judge, 273 Ark. 154, 617 S.W.2d 341 (1981);Jernigan v. Harris, 187 Ark. 705, 62 S.W.2d 5 (1933); McCutchen v. SiloamSprings, 185 Ark. 846, 49 S.W.2d 1037 (1932). Cf. Purvis v. City of LittleRock, 282 Ark. 102, 667 S.W.2d 936 (1984); Williams v. Harris, Mayor,215 Ark. 928, 224 S.W.2d 9 (1949). See also Purvis v. Hubbell, Mayor,273 Ark. 330, 620 S.W.2d 282 (1981); City of Harrison v. Braswell,209 Ark. 1094, 194 S.W.2d 12 (1946) (both involving revenue bonds the payment of which was to be from funds not strictly limited to those arising from the facilities financed).
The validity of most or all of these cases was later called into question though, arguably, not with respect to the narrow question at issue here.See City of Fort Smith v. O'Loughlin, 288 Ark. 294, 705 S.W.2d 420
(1986); City of Hot Springs v. Creviston, 288 Ark. 286, 705 S.W.2d 415
(1986). Recently, however, the court cited McCutchen with approval as authority for the proposition that a city does not lend its credit, within the meaning of Ark. Const. art. 16, § 1, when it "owns a revenue-producing facility, secures the payment of debt solely with revenues from that asset, and impairs neither the city's credit nor its revenues." Barnhart v. City of Fayetteville, 321 Ark. 197, 205,900 S.W.2d 539 (1995). Although the question is not without considerable doubt, it is my opinion that a court likely would hold that a lawfully issued revenue obligation, payable solely from amounts arising from the activity financed by the obligation, is not subject to the limitations of Ark. Const. art. 12, § 4. That constitutional provision does not, of course, provide any independent authority to issue such obligations. The question of whether the insertion of any particular language into a specific obligation would cause it to be a revenue obligation not subject to the limitations of Ark. Const. art. 12, § 4, and whether the obligation is otherwise lawfully issued, are, of course, questions of fact properly to be determined in the first instance by the Board, its counsel, and the county.
Regardless of the continuing validity of the cases cited above, it appears, depending upon the terms and conditions of the obligations here at issue, that they might be authorized by Ark. Const. amend. 65, which provides for the issuance of "revenue bonds for the purpose of financing all or a portion of the costs of capital improvements of a public nature. . . ." Ark. Const. amend. 65, § 1. In my opinion, because Ark. Const. amend. 65 is the later provision of the constitution and expressly authorizes the issuance of revenue bonds, as defined therein, obligations issued pursuant to the authority contained in that amendment are not subject to the limitations of Ark. Const. art. 12, § 4. See Barnhart v.City of Fayetteville, 321 Ark. 197, 900 S.W.2d 539 (1995) (holding that Ark. Const. amend. 65 superseded the prohibition on the issuance of evidences of indebtedness contained in Ark. Const. art. 16, § 1).
You have not inquired specifically about Ark. Const. amend. 65, and I therefore do not discuss it in detail. It appears, however, that at least two statutory schemes, and perhaps others, might be available to the Board (Ark. Const. amend. 65 is not self-executing) in the event it determines to enter into or accept the assignment of the instruments at issue under authority of Ark. Const. amend. 65. See A.C.A. §§ 19-9-601 to -607 (Repl. 1994) (the Revenue Bond Act of 1987); A.C.A. §§ 14-265-101 to -111 (relating to bonds for public hospitals). See also Op. Att'y Gen.93-383 (relating to leases and revenue bonds of county hospitals). Whether any particular obligation is properly issued or entered into pursuant to Ark. Const. amend. 65 and applicable enabling legislation is a question of fact to be determined in the first instance by the Board, its counsel, and the county.
I am not altogether certain of the thrust of the third part of your second question. Amendment 13 to the Constitution of Arkansas was repealed by Amendment 62. See City of Hot Springs v. Creviston,288 Ark. 286, 705 S.W.2d 415 (1986) (supplemental opinion on denial of rehearing). Amendment 13 added several paragraphs to the original (single) paragraph of Ark. Const. art. 16, § 1, and it has been held that Amendment 62 did not repeal that original text, which provides:
 Neither the State nor any city, county, town or other municipality in this State shall ever lend its credit for any purpose whatever; nor shall any county, city or town or municipality ever issue any interest bearing evidences of indebtedness, except such bonds as may be authorized by law to provide for and secure the payment of the indebtedness existing at the time of the adoption of the Constitution of 1874, and the State shall never issue any interest-bearing treasury warrants or scrip.
Ark. Const. art. 16, § 1.
I will assume that your inquiry is whether a clause limiting recourse to hospital revenues on a lease or contract entered into by or assigned to the Board would make inapplicable to the obligation the prohibition on the issuance of "interest bearing evidences of indebtedness" contained in Ark. Const. art. 16, § 1. In my opinion, to the extent such an instrument is a "revenue bond" within the meaning of that phrase in Ark. Const. amend. 65 and has been properly issued or entered into pursuant to that amendment and applicable enabling legislation, the prohibition of Ark. Const. art. 16, § 1, is not applicable. Barnhart v. City ofFayetteville, 321 Ark. 197, 900 S.W.2d 539 (1995).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
[1] You have not inquired, and I therefore express no opinion, about the legality of the Board's simply having one or more ex officio
members. In connection with your second inquiry, you state that the Board is organized pursuant to A.C.A. § 14-263-101 to -106. That subchapter contains a provision stating that a county hospital board "shall consist of seven (7) members, who shall be qualified electors of the county in which the hospital is located and who shall be appointed by the countyjudge and approved by the quorum court." A.C.A. § 14-263-104(a) (emphases added). The subchapter does not appear to make any provision for exofficio members or for individual counties or boards to alter the (apparently mandatory) provisions of A.C.A. § 14-263-104(a). The opinion stated in response to your first question is rendered on the assumption that the Board's having an ex officio membership is not unlawful. If that assumption is not accurate, it likely would follow that the ex officio
"member" is not a member at all, for purposes of A.C.A. §25-19-106(c)(2)(A) or otherwise.